# United States District Court
## Western District of Virginia
### Harrisonburg Division

|  |  |  |
|---|---|---|
| **TRACEY M. MARTIN**, | ) ) ) | Civil No.: 5:10cv00088 |
| *Plaintiff*, | ) ) |  |
| v. | ) ) | **REPORT AND RECOMENDATION** |
| **MICHAEL J. ASTRUE**, Commissioner of Social Security, | ) ) ) |  |
|  | ) | By: Hon. James G. Welsh |
| *Defendant* | ) ) | U. S. Magistrate Judge |

Tracey M. Martin brings this action challenging a final decision of the Commissioner of the Social Security Administration ("the agency") denying her applications for a period of disability and disability insurance benefits ("DIB") under Title II and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423 and 42 U.S.C. §§ 1381 *et seq*., respectively. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g).

Her applications were protectively filed on February 29, 2008. (R11,108-120152,162). Therein, she alleges a disability onset date of June 6, 2007 due to diabetes, kidney cyst, torn rotator cuff, capsulitis (frozen shoulder), bursitis, "bilateral middle lower back strain," high blood pressure, left ankle arthritis, elevated cholesterol, and polycystic ovaries. (R.11,154-161). In a subsequent disability report the plaintiff additionally reported lower extremity swelling and

1

"mental problems" that started on January 28, 2008. (R.196). Her applications were rejected at all levels of the administrative process, including by written administrative law judge ("ALJ") decision dated December 18, 2009. (R.10-24,83-101,103-104). With the Appeals Council's denial of her subsequent review request (R.1-6), the ALJ's decision now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

Along with his answer to the plaintiff's complaint, the Commissioner has filed a certified copy of the Administrative Record ("R."), which includes the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By an order of referral entered on January 12, 2011 this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Both parties have since moved for summary judgment; each has filed a supporting memorandum of points and authorities, and no request was made for oral argument. [1]

## I. Summary Recommendation

Based on a thorough review of the administrative record and for the reasons that herein address each of the plaintiff's several allegations of decisional error, it is recommended that the

---

[1] WDVa Gen. R. 4(c)(2) direct that a plaintiff's request for oral argument in a Social Security case must be made in writing at the time his or her brief is filed.

2

plaintiff's motion for summary judgment be denied and an appropriate final judgment be entered affirming the Commissioner's decision denying benefits.

## II.     Standard of Review

The court's review in this case is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to a period of DIB or to SSI. "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3$^d$ 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3$^d$ 585, 589 (4th Cir. 1996)).  This standard of review is more deferential than *de novo*.  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3$^d$ at 176 (quoting *Laws v. Celebrezze*, 368 F.2$^d$ 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id*. (quoting *Craig v. Chater*, 76 F.3$^d$ at 589).  Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2$^d$ 396, 397 (4th Cir. 1974).  The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review.  *See Island Creek Coal Company v. Compton*, 211 F.3$^d$ 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

### III.   Evidence Summary

At the time the plaintiff alleges she became disabled, she was forty-four years of age. (R.22). She had a high school equivalency education and one year of college course work. (R.34,544). Her past relevant work included jobs as a certified nursing assistant, parts assembler, hotel supervisor, food service supervisor, and telemarketer (R,18,34-36,166-183).

A University of Virginia Medical Center ("UVaMC") Endocrinology Clinic treatment note dated May 20, 2008 records the plaintiff's report that she was "very depressed. (R,524). Although she reported no prior history of any mental health problems, it was noted that she appeared to be "under extreme stress" and to "frequently breakdown in tears." (R.524-527). She was given a prescription for an anti-depressant (Paxil) and was referred for mental health care. (*Id*.) When seen for an intake assessment at the UVaMC Psychiatric Clinic on July 17, 2008, it was again noted that she had no significant prior psychiatric history and was experiencing a significant number of depressive symptoms and increasing anxiety. (R.544). Following a mini-mental health examination and intake assessment, Amanda Winters, M.D., concluded the plaintiff had been experiencing some psychosis, probably some paranoia, and a full neuro-vegetative profile "for at least six months." (R.544-547,548-549,553-556). Dr. Winters' diagnosis was Major Depressive Disorder, single episode, with severe psychotic features, and on

the GAF [2] scale she assessed the plaintiff's level of psychological functioning to be only 43. (R.546,555).

Over the ensuing year the plaintiff was seen generally on a monthly basis at the UVaMC outpatient psychiatric facility ("Northridge") for medication management and monitoring of her condition. (R.535-542,551-552,557,642-650). Over this time period the plaintiff's primary treatment diagnoses changed to bipolar affective disorder (type I), post traumatic stress disorder and social phobia, and multiple different pharmacological treatment options were tried due to her ongoing fears of medication side effects. (R,601,642-644).

When seen by Dr. Winters on March 11, 2009, she found that the plaintiff was continuing to exhibit mood instability and severe anxiety; however, she "expected [the plaintiff's condition] to improve," and in her opinion the plaintiff was capable of supporting herself with antipsychotic treatment. (R.601). By May (two months later), Dr. Winters noted that the plaintiff's appearance, behavior, speech, mood, affect, perception, thought processes, thought content, and cognition were all to be normal. (R.645). She found the plaintiff to exhibit "good" insight,

---

[2] The Global Assessment of Functioning ("GAF") is a numeric scale which ranges from 0 to 100 and is used by mental health clinicians and doctors to represent the judgment of an adult individual's overall level of "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV"), 32 (American Psychiatric Association 1994). A specific GAF score represents a clinician's judgment of an individual's overall level of functioning; for example a GAF of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job); 51-60 indicates "moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)," and a GAF of 61-70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social occupational, or school functioning (e.g., occasional truancy or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. DSM-IV at 32.

"good" thought control, and "good" judgment. It was, therefore, her recommendation that the plaintiff be transferred to a medication management physician. (*Id.*)

In Dr. Winters' subsequent Transfer Summary, she reported the plaintiff's GAF level of psychological functioning had significantly increased to 60, and she reported that the plaintiff was taking Depakote as a mood stabilizer and Lexapro as an antidepressant. (R.642-644). Pertinent to the plaintiff's separate treatment for multiple physical health problems, Dr. Winters also noted in her summary that the plaintiff was an insulin-dependent diabetic and was taking hydrochlorothiazide (as a diuretic), Zocor (as a lipid lowering agent), Losartan (for high blood pressure), gabapentin (for neuropathic pain), and aspirin (as a pain reliever). (*Id.*).

Between October 2008 and January 2009, the plaintiff's mental health treatment records further show that she was seen for five counseling sessions through Valley Community Services Board ("VCSB"). (R.559-569). At the time of the VCSB intake assessment on October 23, 2008, the staff social worker reported that the plaintiff was appropriately dressed, well-groomed, fully oriented, of average intelligence, and demonstrated no psychotic or delusional behavior; however, it was also noted that she exhibited a flat affect and a current GSF level of 50. (R.564-566). Subsequent VCSB progress notes, dated between November 14, 2008 and January 26, 2009 suggest no significant change in her condition. She remained fully oriented, and her affect varied at times between "appropriate" and "depressed." (R.559-563).

Apparently after a nine-month period of non-treatment for any mental health issues, on October 7, 2009, the plaintiff returned to VCSB for a single counseling session, and the

6

following month she completed a self-assessment questionnaire. (R.656,659-661). The VCSB progress note pertaining to her fifty-minute counseling session in October suggests that the plaintiff's mental health status continued to be unchanged, despite the unexplained nine-month non-treatment interval. (*Compare*R.656 with R.559). In her subsequent self-assessment, however, she asserts that her mental health problems are acute and functionally limit her activities to self-care. (R.659-661).

On December 4, 2008, as part the state agency's consideration of the plaintiff's disability claims, her medical records were reviewed by R. John Kalil, Ph.D. Based on his review, Dr. Kalil concluded that the plaintiff had both a major depressive disorder and a generalized anxiety disorder. (R.578-595). In his disability evaluation, Dr. Kalil took note of the plaintiff's physical inability to stand for extended periods of time and her several limitations due to mental health issues, including an inability to understand and remember complex or detailed instructions, her difficulty working with or near others without being distracted, and an exacerbation of symptoms due to stress. (R.595-596). Based on the record, Dr. Kalil concluded that these limitations were "significant, but not so severe as to preclude performance of routine work tasks." (*Id*.).

Three months after the ALJ's issuance of his decision on December 18, 2009, and during the time that he claims were pending before the Appeals Council, the plaintiff was seen for a one-hour mental status evaluation by Melissa Robinson, M.D., at Augusta Health Psychiatric Services. (R.664-667). *Inter alia* in the history provided by the plaintiff, she reported that she had never been hospitalized for mental health treatment and that the medication regime (Depakote and Lexapro) prescribed in 2008 by Dr. Winters had been "very effective" in

7

controlling her symptoms. (R.664-665). Her current mental health issues, she reported, included irritability and an inability either to tolerate loud noises or cope with life. As part of Dr. Robinson's mental health interview, she noted that the plaintiff was dressed neatly with "fair" grooming and hygiene, was fully oriented, made good eye contact, reported no psychotic symptoms, exhibited no delusional thought content, and showed "good" insight and judgment; however, her speech was somewhat rapid and her thoughts somewhat circumstantial. (R.666). In her multi-axial assessment, Dr. Robinson concluded that the plaintiff's acute symptoms suggested an Axis I diagnosis of a bipolar I disorder, a possible diagnoses of a post traumatic stress disorder and a generalized anxiety disorder. (*Id.*). She further concluded that the plaintiff was currently experiencing "severe" recent Axis IV stressors; and that she was functioning at 50 on the GAF scale. (*Id.*).

Six weeks after her initial clinical evaluation, Dr. Robinson opined in a "To Whom It May Concern" letter that the plaintiff was experiencing multiple symptoms of mental illness, despite compliance with psychiatric care, and continued to be "unable to function in any capacity occupationally for an indefinite period of time." (R.669). There is, however, no indication in the record that any of the plaintiff's earlier mental health records or treatment notes had been reviewed or considered in connection with this conclusory assessment. Likewise, there is no indication in the record that any psychological, ability, personality, neuropsychology, or other testing had been administered in connection with this functional assessment.

Separate from her mental health care, the plaintiff's medical records document her treatment for a variety of physical ailments and conditions. Between January 2006 and

8

September 2009 she received medical care and treatment from UVaMC's Endocrinology and Family Clinics, Rockingham Memorial Hospital ("RMH"), Augusta Medical Center ("AMC"), Robert Shouey, DPM, and Robert Canady, M.D. Throughout this period her principle ongoing treatment was for long-standing, poorly or uncontrolled type 2 diabetes complicated by nephropathy and peripheral neuropathy; in addition she was also treated for a number of other chronic and transient medical issues, including hypertension, hyperlipidemia, a polycystic ovarian syndrome, obesity, chest pain and discomfort, heart palpitations, a small benign right kidney renal cyst, dysfunctional uterine bleeding, sinus drainage, dehiscence of an old surgical wound, bilateral foot pain, a left shoulder strain, left arm pain, breast discomfort, headaches, dizziness, blood in her urine, mild urinary urgency and nocturia, lower extremity cramps, a benign left arm soft tissue mass, sleep apnea, chills, and miscellaneous body aches. (R.251,253,255,257,263-268,272,261,282,274-280,287-290-292,296-337,397-400,404-407,412-415,433-437,439-441451-455,467-471,472-474,477-479,488-489,491-497,501-502,508-512, 514-516,590-599,604-612,616-632,635-638,653).

Associated particularly with her insulin-dependent diabetic condition, her attendant bilateral lower extremity neuropathy, and her obesity, the medical record also documents the plaintiff's reports of lower extremity numbness, edema and weakness, problems lifting and fatigue. (*E.g*., R.299-301,301,310,314,323,406,604,616-617,653). Nothing in the record, however, suggests that these conditions, either singularly or in combination, are functionally inconsistent with work activity.

**IV.  Analysis**

9

The ALJ evaluated the plaintiff's DIB and SSI claims using the agency's five-step process.[3] (R.14-24). At the first step he determined that the plaintiff had not engaged in substantial gainful work activity since her alleged disability onset date. At step two, he determined that the plaintiff's diabetes, peripheral neuropathy, obesity, bipolar disorder, and post-traumatic stress disorder were all *severe*[4] impairments. At the third decisional step he found that none of these impairments met or medically equaled an impairment listed in 20 U.S.C. pt. 404, subpt. P, appx. 1. At step four, he concluded that she was not capable of performing any of her past relevant work, and based on his review of the entire record at the final decisional step the ALJ concluded that the plaintiff retained the functional ability to perform "a wide range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a)."

On appeal the plaintiff focuses on the nature and extent of what she contends are her disabling mental health issues and the attendant errors by the Appeals Council and by the ALJ. In her claim of error by the Appeals Council, the plaintiff argues that it failed to consider

---

[3] This process requires the ALJ to consider whether a claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and (5) if not, whether he or she can perform other work. *See* 20 C.F.R. §§ 404.1520 and 416.920. If the ALJ finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a) and 416.920(a). Under this analysis, a claimant has the initial burden of showing that he or she is unable to return to any past relevant work because of his or her impairments. Once the claimant establishes such a *prima facie* case of disability, the burden shifts to the agency to then establish that the claimant has the residual functional capacity, considering the his or her age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. § 423(d)(2)(A); *McLain v. Schweiker*, 715 F.2d 866, 868-869 (4th Cir. 1983); *Hall v. Harris*, 658 F.2d 260, 264-265 (4th Cir. 1981); *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

[4] Quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984), the Fourth Circuit held in *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984), that "an impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *See also* 20 C.F.R. §§ 404.1520(c) and 416,920(c).

10

properly the results of a mental evaluation conducted during the period her request for review was pending before the Appeals Council. As claims of error by the ALJ, the plaintiff challenges the ALJ's findings that her mood disorder was not of listing-level severity,his discount of her testimony and his discount of certain opinion evidence pertaining to her functional limitations. After a careful review of the entire record, each of these contentions is without merit.

### A.

The plaintiff's assertion that the Appeals Council failed to review her post-hearing submission is simply contrary to the record. This evidence as listed by the Appeals Council in its Order of August 20, 2010 (R.5) consists of Dr. Mellissa Robinson's March 11, 2010 office note (R.664-667), recording her initial clinical examination of the plaintiff on that date, and Dr. Robinson's later letter (R.669) expressing her opinion that the plaintiff "is unable to function in any capacity occupationally for an indeterminate period of time." In her letter Dr. Robinson attributes this inability to work to the plaintiff's "bipolar 1 disorder with a recent mixed episode as well as chronic severe post traumatic stress disorder. (R.669).

In addition to noting its receipt of these post-hearing submissions, the Appeals Council also expressly reported "consideration" of this evidence, [5] and its determination that this evidence "d[id] not provide a basis for changing the [ALJ's] decision." (R.1-2,5).

---

[5] Since the Appeals Council considered this evidence in deciding not to grant review, (R.1-5), this court is obligated consider it in determining whether substantial evidence supports the ALJ's findings. *See Wilkins v. Sec'y,HHS,* 953 F.2$^d$ 93, 96 (4th Cir. 1991).

11

The Appeals Council is required to take into account additional evidence submitted to it, only "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Wilkins v. Sec'y, HHS*, 953 F.2$^d$ 93, 95-96 (4th Cir. 1991); *see* 20 C.F.R. § 404.970(b). Evidence is new if it is neither duplicative nor cumulative. *Wilkins,* 953 F.2$^d$ at 96. And it is material only "if there is a reasonable possibility that the new evidence would have changed the outcome." *Id*.; 20 C.F.R. § 404.970(b).

Even if it is assumed *arguentdo* that Dr. Robinson's post-decision observations, examination findings and opinion are "new" evidence with the meaning of *Wilkins*, there is no reasonable possibility that this evidence would have changed the ALJ's decision. First and foremost, this evidence pertains to a consultive mental status examination performed three months after the ALJ's issuance of his decision, and on its face does not properly relate to the period on or before the date of the ALJ's decision. *Wilkins*, 953 F.2$^d$ at 95. Moreover, as the Fourth Circuit has recognized medical source opinions prepared after an ALJ's decision are less persuasive than opinions issued prior to the his decision. *Wagner v. Apfel*, 1999 U.S. App. LEXIS 29887, *10 (4th Cir. 1999) (citing *Macri v. Chater*, 93 F.3$^d$ 540 (9th Cir. 1996).

On review Dr. Robinson's office note also suggests no new insight into the plaintiff's work abilities or any different mental health diagnosis. It suggests no need for any hospitalization or other acute care; it records the renewal of the plaintiff's prior medication regime, it records the plaintiff's confirmation that her medication regime had been "very effective;" it notes the fact that she "had done well in the past with psychiatric care;" it notes the absence of any psychotic symptoms or delusional thoughts, and the other clinical findings are

12

also generally consistent with the plaintiff's prior mental health treatment record as outlined by the ALJ. (R.14-15,19-21,664-666).

Similarly, Dr. Robinson's letter expressing the opinion that the plaintiff "is unable to function in any capacity occupationally" presents no reasonable possibility of a changed outcome given its inconsistency with other substantial evidence in the record and its conclusory nature. Whether a DIB or SSI applicant is disabled is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e) and 416.927(e).

In summary, contrary to the plaintiff's contention, her post-hearings submissions to the Appeals Council did not require either the grant her request for review or the remand of her claims for further proceedings. Neither Dr. Robinson's clinical findings nor her conclusory opinion established the ALJ's decision to be erroneous.

**B.**

To establish a listing-level disability under listing 12.04, the plaintiff must establish that her affective disorder satisfies certain component paragraphs. *See Bowen v. Yuckert*, 482 U.S. 137, 146, n.5 (1987); *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990). The paragraph A criteria consist of certain documented medical findings demonstrating a persistent affective disorder. The paragraph B criteria are satisfied when the paragraph A criteria have a "marked" [6]

---

[6] A "marked" level of severity is less than extreme but more than moderate, and "episodes of decompensation" of extended duration equate to three episodes in one year or an average of one episode every four months, each lasting at least two weeks. 20 C.F.R. pt. 404, subpart P, appx. 1, 12.00(C).

impairment-related functional limitations or repeated extended episodes of decompensation. [7] Alternatively, the regulatory criteria of listing 12.04 may be met under paragraph C when there is at least a two-year medically documented history of a chronic affective disorder with repeated episodes of decompensation, or a residual disease process that has resulted in such marginal adjustment, or a current history of a one or more year inability to function outside a highly supportive living arrangement. 20 C.F.R. pt. 404, subpt. P, appx. 1, § 12.04(C).

In a one-sentence statement in her brief, the plaintiff asserts that it is "readily apparent" that her condition meets listing 12.04; however, she offers no reference in the record to support this assertion. In contrast, the ALJ explained in detail the bases for this conclusion that the plaintiff's evidence failed to satisfy the criteria of either paragraph B or paragraph C. (R.14-15).

Concluding that the plaintiff's evidence failed to satisfy the paragraph B criteria of at least two marked limitations or one marked limitation and repeated episodes of decompensation, the ALJ took note of the fact that she had experienced no decompensation episode, and he observed that her Function Report (R.208-215) disclosed only mild daily living restrictions, moderate social functioning difficulties, and moderate concentration and persistence difficulties. (R.15). Similarly, he concluded that the criteria of paragraph C were not satisfied given the absence of any evidence that the plaintiff had experienced any periods of decompensation or any indication of an inability to function outside of a highly supportive living environment. (R.15).

---

[7] *See* preceding footnote.

**C.**

On appeal the plaintiff next argues that the ALJ "erred in assessing [her] credibility" regarding the severity of her limitations. At its core this argument seeks to have the court re-weigh the evidence and make a new credibility determination. For that reason alone this argument is unpersuasive.

On review, the ALJ's decision clearly shows that he made his evaluation of the actual intensity and persistence of the plaintiff symptoms and limitations by considering "all of the evidence," including *inter alia* the objective medical evidence, the plaintiff's medical history, her reported daily activities, her relatively benign physical examinations, her inconsistent medication compliance, the duration, frequency and intensity of her psychiatric symptoms, and her work after the alleged onset date. (R.16-21). *See* Social Security Regulation 96-7p; 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). His evaluation is, therefore, fully consistent with the record, and it provides a cognizable basis in substantial evidence to discount the plaintiff's testimony concerning the debilitating degree to which she is limited and unable to engage in any type of work activity.

Moreover, such credibility determinations are for the ALJ to make. *Shively v. Heckler*, 739 F.2$^d$ 987, 989-990 (4th Cir. 1984). He had the opportunity to observe the plaintiff's demeanor and to assess her credibility. *Id*.

**D.**

15

Lastly, the plaintiff contends that the ALJ decisionally erred by failing to give controlling weight to a report of Dr. Williams in March 2009 to the Virginia Department of Social Services in which she opins that the plaintiff's mental health condition made her unable to perform work in a position of responsibility or with exposure to social environments. (R.601).

To the extent that this contention may be read to infer that Dr. Winters' opinion should be automatically accorded controlling weight on the basis of her status as a treating physician, such reliance would be misplaced. The basis reason an ALJ generally must give more weight to the opinion of a treating physician is because she (or he) is often most able to provide "a detailed, longitudinal picture" of an individual's alleged disability. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). However, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996); *see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) ("[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) ("the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence) (citation omitted); *Wireman v. Barnhart*, 2006 U.S. Dist. LEXIS 62868, *23 (WDVa. Sept. 5, 2006) (an ALJ "may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source . . . if he sufficiently explains his rationale and if the record supports his findings"); 20 C.F.R. §§ 404.1527(d)(3) and 416.927(d)(3).

Giving Dr. Winters' opinion "appropriate weight," the ALJ took note of her exception that the plaintiff's condition would improve and that the plaintiff had been severely limited only for a six-month period beginning in July 2007. (*Id.*). Inconsistent with Dr. Winter's opinion, the ALJ also noted that her treatment record demonstrated that the plaintiff's symptoms had in fact improved over time, that the plaintiff had been only partially compliant with her treatment regime, and that the plaintiff was routinely found to be well-kempt, fluent, appropriate, normal and oriented. (R.21,645).

Having given good reasons in his decision to give Dr. Winters' opinion less than controlling weight, the ALJ then concluded that the detailed and focused assessment of the state agency consultant was more persuasive. *See* 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Without serious question, therefore, substantial evidence supports the ALJ's decision to give less than controlling weight to Dr. Winters' opinion.

In passing, it is appropriate also to note that as part of her contention that Dr. Winters' opinion merited controlling weight, the plaintiff associates it with a later (November 2009) "self assessment" she completed through the Valley Community Services Board. (R.659-661). On its face this self assessment supports her testimony concerning the debilitating nature of her psychiatric condition; however, as the Commissioner points-out in his brief, it is not a legitimate medical source and was appropriately accorded little weight. (R.21).

**V.     Proposed Findings**

As supplemented by the above summary and analysis and on the basis of a careful and thorough examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. In all material respects the Commissioner's final decision is rational and supported by substantial evidence;

2. The ALJ properly evaluated and assessed the opinion evidence of Dr. Winters;

3. The Appeals Council appropriately considered the office note and opinion evidence of Dr. Robinson;

4. Neither Dr. Robinson's office note nor her later opinion letter pertain to a period before the ALJ's issuance of his decision;

5. The ALJ's determination that plaintiff's testimony was not entirely credible is supported by substantial evidence;

6. The ALJ's finding that the plaintiff's affective disorder did not meet or medically equal listing 12.04 is supported by substantial evidence; and

7. All facets of the Commissioner's final decision should be affirmed.

## VI. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING JUDGMENT to the defendant, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

**VII.    Notice to the Parties**

Both sides are reminded that pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof.  Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED:  30th day of December 2011.

                                                                          /s/     *James G. Welsh*
                                                                      United States Magistrate Judge

,